Filed 2/13/14 (unmodified opn. attached)

## CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CITY OF CLOVIS et al.,<br><br>    Plaintiffs and Respondents,<br><br>        v.<br><br>COUNTY OF FRESNO,<br><br>    Defendant and Appellant. | F060148<br><br>(Super. Ct. No. 08CECG03535)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING [CHANGE IN JUDGMENT]** |

IT IS ORDERED, pursuant to California Rules of Court, rule 8.264(c)(1), that the published opinion filed in this appeal on January 16, 2014, be modified in the following particulars. The page numbers in this order refer to the pagination of the slip opinion.

1.      Delete the first sentence of the first paragraph on page 5. Replace it with the following:

> On September 30, 2013, after briefing was completed, the Legislature enacted legislation addressing interest awardable against local government entities in certain types of cases.

2.      Delete the second paragraph on page 5 (beginning "In other words .…).

3.      On page 19, in the first paragraph of subsection B., delete the final sentence.

4.      Delete the last paragraph on page 20. Replace it with the following:

> The new legislation applies to interest in the present action beginning January 1, 2014.

5. Delete the first paragraph of the Disposition. Replace it with the following:

> The judgment is modified to reflect that, effective January 1, 2014, the rate of interest to be awarded in this action is controlled by section 3287, subdivision (c). The judgment is affirmed in all other respects.

6. Delete footnote 6.

The alternative request for rehearing contained in the letter filed by the City and County of San Francisco on February 5, 2014, is denied. Except for the modifications set forth, the opinion previously filed remains unchanged. These modifications include a change in the judgment, as reflected in the modified Disposition.

_____
Oakley, J.*

WE CONCUR:


_____
Gomes, Acting P.J.


_____
Detjen, J.

---

*Judge of the Superior Court of Madera County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CITY OF CLOVIS et al., | F060148 |
| Plaintiffs and Respondents, | (Super. Ct. No. 08CECG03535) |
| v. | |
| COUNTY OF FRESNO, | **OPINION** |
| Defendant and Appellant. | |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County. Jeffrey Y. Hamilton, Jr., Judge.

Freeman, D'Aiuto, Pierce, Gurev, Keeling & Wolf, Thomas H. Keeling; Kevin Briggs, County Counsel, Arthur G. Wille and Peter J. Wall, Deputy County Counsel, for Defendant and Appellant.

Jennifer B. Henning for California State Association of Counties as Amicus Curiae on behalf of Defendant and Appellant.

Jarvis, Fay, Doporto & Gibson, Benjamin P. Fay and Rick W. Jarvis; Colantuono & Levin, Michael G. Colantuono and Jon R. DiCristina for League of California Cities as Amicus Curiae on behalf of Plaintiffs and Respondents.

McCormick, Kabot, Jenner & Lew, Nancy A. Jenner for Plaintiffs and Respondents.

-ooOoo-

The City of Clovis and six other Fresno County cities (cities) sued the County of Fresno (county) over the calculation of a fee the county withholds for the service of collecting property taxes from property owners and distributing the proceeds to the cities. In other litigation raising the same fee-calculation issue, the California Supreme Court rejected the county's position and required use of the methodology advocated by the cities. (*City of Alhambra v. County of Los Angeles* (2012) 55 Cal.4th 707 (*Alhambra*).) The trial court in this case anticipated *Alhambra*. It ordered the county to apply the methodology advocated by the cities and to issue refunds to the cities. It also ordered the county to pay prejudgment and postjudgment interest.

The county appeals. It does not challenge the orders to use the *Alhambra* methodology and issue refunds. It appeals only from the order to pay prejudgment and postjudgment interest, an issue the *Alhambra* opinion does not address.

As we will explain, the relevant statutes were amended on September 30, 2013, effective January 1, 2014. Having ordered supplemental briefing on the new law, we conclude that we must address it because it will be in effect at the time when the judgment in this case becomes final. As we will explain, interest was awardable even under the law in effect at the time of trial. Under the new law, interest is likewise awardable, though at different rates. The new law changes the applicable rates of interest.

We will affirm the trial court's judgment insofar as it awards prejudgment and postjudgment interest, but we will reverse with respect to rate of interest on and after January 1, 2014.

### *FACTUAL AND PROCEDURAL HISTORIES*

The *Alhambra* opinion explains the legal issue behind the parties' primary dispute. To compensate counties for administrative costs incurred in their role as tax collectors, counties are authorized to charge cities a property tax administration fee (PTAF). (*Alhambra, supra,* 55 Cal.4th at p. 714.) A county withholds the PTAF from the tax revenues distributed to the cities. (*Id.* at p. 715.) The PTAF for each city is based on the

2.

ratio of the taxes collected on its behalf to the total property taxes collected by the county. (*Ibid.*) Excluded from this calculation, however, are taxes collected on behalf of cities and deposited into the county's Educational Revenue Augmentation Fund (ERAF). (*Id.* at pp. 713-714, 715.) The county ERAF's were created by the Legislature in 1992 to help resolve a budget crisis. Property tax revenue is diverted from local government to each county's ERAF to maintain funding levels for education in the face of declining contributions from the state general fund. (*Id.* at p. 714.) Since property tax revenues diverted to ERAF's are not included in the calculation of the PTAF's withheld by the counties, each county must absorb the cost of administering those revenues and is not reimbursed for it by cities. (*Id.* at p. 715.)

In 2004, in response to another budget crisis, the Legislature diverted ERAF money to cover various budget gaps. This diversion took two forms. The first, known as the "Triple Flip," caused local sales tax revenue to be diverted to repay state bonds. ERAF funds were then used to replace the lost sales tax revenue, and state general fund money was used to compensate for the lost ERAF funds. (*Alhambra, supra*, 55 Cal.4th at pp. 715-716.) The second diversion involved the state Vehicle License Fee (VLF) and is called the "VLF Swap." The VLF was reduced from two percent of a vehicle's market value to 0.65 percent. This change resulted in a reduction of revenue to local governments. The VLF Swap diverted property tax revenue from the ERAF's to local governments to compensate for the loss. (*Id.* at p. 716.)

Under the Triple Flip and the VLF Swap, property tax revenue that formerly went to the ERAF's now goes to cities, compensating them for lost sales tax and VLF funds. The California State Association of County Auditors prepared informal guidelines for use by counties implementing the statutory changes. According to these guidelines, the PTAF for each city should now be calculated on the basis of distributions, including the amount that formerly went to the county's ERAF, instead of excluding that amount as before. (*Alhambra, supra*, 55 Cal.4th at p. 717.) This means the administrative costs associated

3.

with collecting and distributing those funds would be shifted from counties to cities. (*Ibid.*) Los Angeles County followed the guidelines (*ibid.*), as did Fresno County and some other counties.

In *Alhambra*, our Supreme Court rejected these counties' interpretation of the statutory changes that resulted in the Triple Flip and the VLF Swap. The court concluded that counties "should be no better, or worse, off in recouping [their] costs of property tax administration as a result of" the statutory changes. (*Alhambra, supra*, 55 Cal.4th at p. 725.) Los Angeles County's method of calculating the PTAF was held to violate the law. (*Id.* at p. 729.)

In the present case, the cities initiated mandate proceedings against the county on grounds that, as the parties agree, are essentially identical to those on which the cities in *Alhambra* sued Los Angeles County. Before the Supreme Court's decision in *Alhambra* was issued, the trial court in this case anticipated that decision by holding the county's method of calculating the PTAF unlawful. It ruled that the county could withhold "the actual incremental costs to implement the Triple Flip and VLF Swap in lieu payments" but could not increase the basis on which the PTAF was calculated by including the ERAF revenue. The county was required to refund the difference to the cities for each year in which it had applied its erroneous new formula. The judgment also includes the following: "Petitioners are awarded costs of suit, prejudgment interest and postjudgment interest at the rate of 7% per annum as set forth in Civil Code section 3287 and article XV, section 1 of the California Constitution."

As the Supreme Court noted, the county's appeal in this case was stayed during the pendency of *Alhambra* in the Supreme Court. (*Alhambra, supra*, 55 Cal.4th at p. 712, fn. 3.) After *Alhambra* was decided, the county filed its opening brief challenging only the award of prejudgment and postjudgment interest, and arguing that no law authorized those awards.

4.

On September 30, 2013, after briefing was completed, the Legislature enacted legislation addressing prejudgment and postjudgment interest, and the rates of such interest, awardable to local government entities in certain types of cases. (Stats. 2013, ch. 424 (chapter 424).) Chapter 424 amended Civil Code section 3287[1] to add a new subdivision (c), providing as follows:

> "Unless another statute provides a different interest rate, in a tax or fee claim against a public entity that results in a judgment against the public entity, interest shall accrue at a rate equal to the weekly average one year constant maturity United States Treasury yield, but shall not exceed 7 percent per annum. That rate shall control until the judgment becomes enforceable under Section 965.5 or 970.1 of the Government Code, at which time interest shall accrue at an annual rate equal to the weekly average one year constant maturity United States Treasury yield at the time of the judgment plus 2 percent, but shall not exceed 7 percent per annum." (Ch. 424, § 1.)

In other words, prejudgment interest accrues at a rate equal to the specified treasury yield, and postjudgment interest accrues at the same rate plus two percent, with neither rate to exceed seven percent.

In this case, as noted, the trial court applied existing law and set the prejudgment and postjudgment interest rates at seven percent. The weekly one year constant maturity United States Treasury yield, by contrast, has been less than one percent since the end of 2008 and was considerably below seven percent for many years before that. (<http://www.federalreserve.gov/releases/h15/data.htm> [as of Jan. 10, 2014].)

When it passed chapter 424, the Legislature apparently believed the interest rates payable by government entities under existing law were too high. A Senate Rules Committee report on the legislation stated the views of the bill's author, Assembly Member Eggman, as follows:

---

[1]Subsequent statutory references are to the Civil Code unless otherwise noted.

"California's judgment interest rate against public entities such as schools, special districts, local and state government is out-of-date and provides an artificially higher rate of return than what the current market could provide. These rates result in very large sums of taxpayer money being spent in legal costs.

"When California's judgment interest rate was codified, in the late 70s and early 80s, the U.S. had been in a severe economic recession—characterized by high inflation but low business activity—and interest rates had begun to skyrocket, reaching as high as 21 [percent].

"At the time, the rates adopted were considered significant relief. Now the reverse has happened and market rates are far lower, but there has been no adjustment to reflect this. At a time when local governments continue to struggle, with loss of revenue forcing cuts to vital services—education, public safety, social services—the rate of interest these public entities pay on judgments remains high. That rate is not responsive to the times or to the public interest. In current economic conditions, it is far higher than the market can justify, posing an unnecessary burden to taxpayers, contra[ry] to the public good….

"This bill saves taxpayer money for vital services by tying the rate applying to public entities to a market rate—as does the federal government—that serves as a close indicator of the economy's health, and a fair approximation of the value of the judgment." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 748 (2013-2014 Reg. Sess.) as amended Aug. 20, 2013, p. 7.)

Because chapter 424 was enacted on September 30, 2013, it will become effective on January 1, 2014. (Cal. Const., art. 4, § 8 ["a statute enacted at a regular session shall go into effect on January 1 next following a 90-day period from the date of enactment"].) Oral argument took place and this case was submitted on December 10, 2013. The new law will be in effect when the judgment becomes final.[2]

On November 19, 2013, this court asked the parties to submit supplemental briefs on the effect of chapter 424 on this case. Specifically, we asked the parties to assume for

_____

[2]A decision of the Court of Appeal is final in this court 30 days after the opinion is filed. (Cal. Rules of Court, rule 8.264(b)(1).)

6.

the sake of argument that interest is awardable in this case and to explain whether the new interest rates apply to prejudgment and/or postjudgment interest here. We also asked whether the new rates apply to interest accruing on and after January 1, 2014, even if they do not apply to interest accruing before that date.

In their supplemental brief, the cities argue that the new law does not apply to any portion of the interest in this case because the cause of action arose long before its effective date, and statutes generally apply only prospectively unless the Legislature clearly expresses a contrary intent. The cities also contend that the new legislation does not apply because this case does not involve a "tax or fee claim" within the meaning of new section 3287, subdivision (c). The county argues that, assuming any interest is awardable, the new enactment applies because it is a procedural or remedial statute, and the general rule against retroactivity does not apply to procedural and remedial statutes. In a letter submitting supplemental authority just before oral argument, the cities suggested that the new interest rates apply beginning January 1, 2014.

## *DISCUSSION*

This appeal presents the following questions: Does the law authorize awards of prejudgment and postjudgment interest against the county? If it does, what are the applicable rates of interest? As these are pure questions of law, we review the judgment de novo. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799; *Topanga and Victory Partners v. Toghia* (2002) 103 Cal.App.4th 775, 779-780.)

The cities argue that the issues have not been preserved for appellate review because the county did not object to the interest award in the trial court. We ordinarily do not consider claims of error where an objection could have been, but was not, made in some appropriate form at trial. Such claims are generally forfeited. (*People v. Saunders* (1993) 5 Cal.4th 580, 590.) The rule of forfeiture does not apply, however, to "noncurable defects of substance where the question is one of law," or to "matters involving the public interest or the due administration of justice .…" (9 Witkin, Cal.

7.

Procedure (5th ed. 2008) Appeal, § 406, pp. 464, 465.)  Further, we have discretion to consider a forfeited claim.  (*People v. Williams* (1998) 17 Cal.4th 148, 161-162, fn. 6; *In re Sheena K.* (2007) 40 Cal.4th 875, 887, fn. 7.)  Here we deal with an asserted defect of law, a defect which (had it been a real defect) could not have been cured in the trial court by any means short of an opposite outcome.  We also deal with a matter of public interest, since other counties using the accounting method rejected by the Supreme Court in *Alhambra* might be ordered to pay interest.  We will decline the cities' invitation not to address the merits.

As we will explain, we agree with the cities' view that the interest awards were authorized under prior law.  Additionally, we agree with the county that the present claim of the cities is the type of claim to which chapter 424 is applicable, thus reinforcing our view that interest awards are authorized in this action.  However, we find the legislative modification of the rates of interest to be effective only as of the effective date of the legislation, namely January 1, 2014.

## I.     *Interest was awardable under prior law*

In their original briefs, the parties naturally analyzed the question of whether interest was awardable in this case under the law that applied before chapter 424 was enacted.  As we will explain, interest was properly awarded under prior law.

### A.     *Prejudgment interest*

Section 3287, subdivision (a), authorizes an award of prejudgment interest on damages awarded against a county:

> "A person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day, except when the debtor is prevented by law, or by the act of the creditor from paying the debt.  This section is applicable to recovery of damages and interest from any debtor, including the state or any county, city, city and county, municipal corporation, public district, public agency, or any political subdivision of the state."

8.

The county does not contend that the money it has been ordered to pay cannot be made certain by calculation or that the cities were not entitled to recover it on a particular day. In our view, the plain meaning of section 3287, subdivision (a), calls for an award of prejudgment interest in this case.

The county's argument is that the money it has been ordered to pay is not "damages" within the meaning of section 3287. This argument is based on *City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859 (*Dinuba*).

In *Dinuba*, the City of Dinuba sued Tulare County after that county distributed less property tax revenue to Dinuba's redevelopment agency than the agency was statutorily entitled to receive. (*Dinuba, supra*, 41 Cal.4th at p. 862.) Tulare County claimed it was immune from suit under the Government Claims Act[3] (Gov. Code, § 810 et seq.). (*Dinuba, supra,* at p. 863.)

The Supreme Court disagreed. It gave two reasons for its holding. First, although the Government Claims Act immunizes a public agency from liability for "an injury" caused by an erroneous interpretation or application of "any law relating to a tax" (Gov. Code, § 860.2), it also defines "'injury'" as a harm "of such nature that it would be actionable if inflicted by a private person" (Gov. Code, § 810.8). Tulare County's erroneous tax distribution did not fit this description because "[t]he wrong plaintiffs complain of 'is one which by its very nature could not exist in an action between private persons .…'" (*Dinuba, supra,* 41 Cal.4th at p. 867.)

Second, "the immunity provisions of the [Government Claims] Act are only concerned with shielding public entities from having to pay money damages for torts." (*Dinuba, supra*, 41 Cal.4th at p. 867.) Government Code section 814 provides that "liability based on contract or the right to obtain relief other than money damages is

_____

[3]Government Code section 810, subdivision (b), previously often referred to as the "Tort Claims Act." (See *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 734.)

unaffected by" the immunity provisions of the Government Claims Act. (*Dinuba, supra,* at p. 867.) The Supreme Court reasoned that Dinuba did not "seek damages; [it sought] only to compel [Tulare County] to perform [its] express statutory duty. While compliance with the duty may result in the payment of money, that is distinct from seeking damages." (*Ibid.*) As an example of the kind of remedy that probably would be excluded by the Government Claims Act as damages, the court mentioned "compensatory damages for a downgraded bond rating or increased interest rates as a result of [Tulare County's] failure to disburse the funds to which [Dinuba was] entitled .…" (*Dinuba, supra,* at p. 868.)

In this case, according to the county, the excess PTAF withholding the cities will recover also is not damages. In the county's view, it will only be complying with its statutory duty when it follows the trial court's order to release the excess PTAF withholding, just as Tulare County was doing in *Dinuba* when it repaid the misallocated tax revenue. Therefore, the county maintains, the remedy the trial court ordered is not "damages" within the meaning of section 3287, subdivision (a), and an award of interest is not authorized by that provision.

While superficially attractive, the county's argument does not withstand analysis. "Damages" for purposes of the Government Claims Act does not necessarily have the same meaning as "damages" for purposes of section 3287, subdivision (a). When the Supreme Court held that a monetary remedy to correct a misallocation of revenue among government entities is not damages, it did so specifically for purposes of the Government Claims Act. "*With the statutory scheme* [of the Government Claims Act] *in mind,*" it stated, "we consider the scope of governmental immunity under the Act and whether relief is available." (*Dinuba, supra*, 41 Cal.4th at p. 867, italics added.) It did not consider whether the remedy awarded was damages for purposes of section 3287, subdivision (a). "Language used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered." (*Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2.)

The first reason for rejecting the county's argument, then, is that *Dinuba* simply does not stand for the proposition the county advocates.

Even if we construe the county's argument to be that the Supreme Court merely *implied* that the type of remedy at issue here is not damages for purposes of prejudgment interest, and that the court *would* endorse the county's position *if* it considered the matter, the argument would still be unpersuasive. The *Dinuba* opinion reasoned that reallocation of tax revenue was not damages in the context of the purposes of the Government Claims Act, in order to decide whether that statute's immunity provisions applied to an action for that type of remedy, as we have said. The court's evident objective in holding that these provisions did not apply was to prevent the Government Claims Act from becoming an obstacle to the use of the courts to resolve disputes between governmental entities over the proper allocation of tax revenue, an obstacle the Legislature never intended to create. Viewing the reasoning and result of *Dinuba* from this perspective confirms that the case implies nothing about whether interest can be awarded in litigation of this kind. In holding that governmental entities *can* be liable to one another for this type of monetary recovery, the Supreme Court did not likely intend to intimate that they *cannot* be liable for interest on that money.

Finally, *Dinuba* is distinguishable from this case on its facts. The dispute in *Dinuba* was over the question of whether a county had allocated the correct amount of tax revenue to a city. That is the context in which the Supreme Court held there to be no dispute of a kind that could arise between private parties. Here, as the cities point out, the dispute is over the amount of a fee charged by the county, a type of dispute that arguably could arise between private parties. Consequently, it is not at all clear that the *Dinuba* court's reasoning would point to the denial of an interest award here, even assuming its reasoning can be transferred to the context of this case. The considerations relevant to misallocation of tax revenue are different.

For these reasons, the appropriate inquiry is whether the money award is damages in light of the purposes of section 3287, not whether it is damages in light of the purposes of the Government Claims Act. A primary purpose of section 3287 is to ensure that a plaintiff awarded money by a court receives, in addition, the lost time value of that money. (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 663-664.) That purpose is applicable here.

The county asserts that no interest of any kind should be awarded because Revenue and Taxation Code section 96.1, subdivision (c)(3), does not mention interest. That statute provides that, when a county must reallocate taxes for previous fiscal years, the total amount reallocated cannot exceed one percent of the current year's tax roll and is to be distributed in installments over three years. (Rev. & Tax. Code, § 96.1, subd. (c)(3).) The county contends this is a specific statute that controls over section 3287, which is a general one.

The county is mistaken. The rule that a specific statute controls over a general one applies to conflicts between statutes. (Code Civ. Proc., § 1859 ["when a general and particular provision are inconsistent, the latter is paramount to the former"]; *Stone Street Capital, LLC v. California State Lottery Com.* (2008) 165 Cal.App.4th 109, 119 ["If inconsistent statutes cannot otherwise be reconciled, 'a particular or specific provision will take precedence over a conflicting general provision.'"].) Section 3287 and Revenue and Taxation Code section 96.1 do not conflict. One statute provides for interest awards. The other is silent about interest awards. That is not a conflict.

Amicus curiae California State Association of Counties (Association) also argues that Revenue and Taxation Code section 96.1, subdivision (c)(3), is a bar to the interest award in this case. Association relies on legislative history documents to support the contention that the statute reflects a desire on the part of the Legislature to relieve hardship for counties. Association says this desire is inconsistent with an intent to allow interest awards.

12.

Even if the Legislature had this motivation, we do not think the statute bars interest awards for any category of judgments against counties. When subdivision (c)(3) of Revenue and Taxation Code section 96.1 was enacted in 2001 (Stats. 2001, ch. 381, § 1), section 3287 already provided for interest awards against counties (Stats. 1955, ch. 1477, p. 2689; Stats. 1959, ch. 1735, p. 4186), and the Legislature did not see fit to create an exception. We assume the Legislature knows existing law and legislates in light of it. (*People v. Harrison* (1989) 48 Cal.3d 321, 329.)

Association also contends that the Legislature must have intended to preclude interest awards in disputes like this one because "the Legislature has provided for the payment of interest in other sections of the Revenue and Taxation Code" but did not so provide in Revenue and Taxation Code section 96.1. The only example Association cites is Revenue and Taxation Code section 5151, which provides for interest on refunds of property taxes to taxpayers. We do not believe the Legislature's decision to authorize interest in that situation is an implied bar on interest awards against counties in all other cases involving taxes. Again, the Legislature acted against the background of section 3287 and did not choose to create any exception that would govern this case.

Finally, Association argues that the interest award in this case is inconsistent with public policy because it means a city could be ordered to pay interest if it were "erroneously allocated too much property tax." This would be inappropriate, Association says, because it would complicate financial planning.

Upholding the interest award in this case, where the county overcharged the cities because it used an erroneous method of calculating the PTAF, implies nothing about whether it would be appropriate to award interest against a city if, through no fault of its own, a county erroneously overpaid it. We express no opinion about that situation.

### B. *Postjudgment interest*

The trial court's award of postjudgment interest was authorized by article XV, section 1, of the California Constitution, which states in part:

"The rate of interest upon a judgment rendered in any court of this State shall be set by the Legislature at not more than 10 percent per annum. Such rate may be variable and based upon interest rates charged by federal agencies or economic indicators, or both.

"In the absence of the setting of such rate by the Legislature, the rate of interest on any judgment rendered in any court of the State shall be 7 percent per annum."

The California Supreme Court has held that postjudgment interest can be awarded upon judgments entered against local government entities and that seven percent is the correct rate. (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 344-345, 347-348 (*California Federal*).) Code of Civil Procedure section 685.010 provides that, "[i]nterest accrues at the rate of 10 percent per annum on the principal amount of a money judgment remaining unsatisfied," but Government Code section 970.1, subdivision (b), provides that a judgment against a local public entity is "not enforceable under Title 9 (commencing with Section 680.010) of Part 2 of the Code of Civil Procedure," of which Code of Civil Procedure section 685.010 is a part. The Supreme Court held that the effect of Government Code section 970.1, subdivision (b), is that the seven percent rate set forth in the Constitution is the applicable rate for judgments against local public entities.[4] (*California Federal, supra,* at pp. 344-345, 347-348.)

The county's argument about postjudgment interest is as follows: Code of Civil Procedure section 685.010 provides for interest on a "money judgment"; Code of Civil Procedure section 680.270 defines a money judgment as "that part of a judgment that requires the payment of money"; and the judgment in this case is not a money judgment under that definition because (among other reasons) it requires the amount due to be calculated instead of stating the amount in dollars and cents.

---

[4]Chapter 424 amended Government Code section 970.1 to conform to new section 3287, subdivision (c), i.e., to provide for postjudgment interest, on tax or fee judgments, equal to the weekly average one year constant maturity United States Treasury yield plus two percent, not to exceed seven percent.

14.

The county's argument overlooks the plain language of Government Code section 970.1, subdivision (b). As our Supreme Court observed in *California Federal, supra*, 11 Cal.4th at page 344, that statute exempts local government entities from title 9 of the Code of Civil Procedure, in which Code of Civil Procedure sections 685.010 and 680.270 are contained. The issue of postjudgment interest against local government entities therefore was governed only by article XV, section 1, of the California Constitution, until the enactment of chapter 424. The constitutional provision does not refer to a "money judgment" or state any definition of a money judgment. It refers instead to "interest upon a judgment" and "interest upon any judgment." Government Code section 970, subdivision (b), defines "'judgment'" as "a final judgment for the payment of money rendered against a local public entity."

The trial court's seven-percent postjudgment interest award was correct under article XV, section 1, of the California Constitution and *California Federal.*

## II.  *Applicability of new law to cause of action arising before effective date*

We agree with the county's view that the new law is applicable even though it became effective after the events underlying the cause of action took place. This is because it is a remedial or procedural statute and will be in effect when the judgment becomes final. The cities are mistaken in their reliance on the general rule that new laws apply only prospectively.

"A basic canon of statutory interpretation is that statutes do not operate retrospectively unless the Legislature plainly intended them to do so." (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243.) At the same time, it has been held that if a statute is remedial or procedural in nature, it may be applied in litigation pending when it came into effect, even if the events underlying the cause of action took place before it came into effect, so long as it does not create a new cause of action, deprive a defendant of a defense on the merits, or alter a party's vested rights. (*Kuykendall v. State Bd. of Equalization* (1994) 22 Cal.App.4th 1194, 1211, fn. 20 (*Kuykendall*).)

15.

Chapter 424 is remedial or procedural within the meaning of the case law on this topic. Plainly, it does not create a new cause of action or eliminate a defense on the merits. It is also clear that it does not alter the cities' vested rights, for it has been held that no one has a vested right in existing remedies. (*Kuykendall, supra*, 22 Cal.App.4th at p. 1211, fn. 20; *Hardy v. Western Landscape Construction* (1983) 141 Cal.App.3d 1015, 1018; *Coast Bank v. Holmes* (1971) 19 Cal.App.3d 581, 596.)

Consequently, the anti-retroactivity rule does not apply. The application of new procedural or remedial statutes to cases still pending on appeal when they become effective is *deemed not to be retroactive*—even though the cause of action arose earlier— because the change in the law affects only the conduct of the litigation and the provision of a remedy going forward, not the rights and duties of the parties in the past. (*Coast Bank v. Holmes, supra*, 19 Cal.App.3d at pp. 593-594.) New procedural or remedial laws are consistently applied to cases not yet final when they become effective, unless the Legislature expresses an intent *not* to so apply them. (*Mir v. Charter Suburban Hospital* (1994) 27 Cal.App.4th 1471, 1478; *Hogan v. Ingold* (1952) 38 Cal.2d 802, 814-815.)

This doctrine has been applied to changes in remedies with equal or greater consequences for the parties than the change in interest rates here at issue. In numerous cases, it has been held that new statutes allowing awards of attorneys' fees are applicable to litigation pending when the statutes came into effect, even though they were not in effect when the underlying facts took place. (*Rumford v. City of Berkeley* (1982) 31 Cal.3d 545, 559 [attorneys' fees awardable under Code Civ. Proc., § 1021.5, which became effective while case was pending on appeal]; *Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 928-932 [same]; *Coast Bank v. Holmes, supra*, 19 Cal.App.3d at pp. 593-594 [contractual attorney fee award upheld under § 1717, which became effective after execution of the contract and after alleged default]; *Mir v. Charter Suburban Hospital, supra*, 27 Cal.App.4th at p. 1478 [Bus. & Prof. Code, § 809.9 applicable as basis of attorney fee award in action pending on statute's effective date].)

The cities attempt to distinguish *Kuykendall*, which was mentioned in our briefing letter. They point out that the *Kuykendall* court concluded that the Legislature clearly intended the statute there at issue to be applied retroactively (*Kuykendall, supra,* 22 Cal.App.4th at p. 1209), while there is no indication that the Legislature had a similar intent here. The cities overlook the fact, however, that the *Kuykendall* court *also* relied on the proposition that "the rule a statute should be construed as not operating retroactively absent a clear legislative direction does not apply where, as here, the statute is remedial or procedural in nature." (*Id*. at p. 1211, fn. 20.) As we have said, when statutes are remedial or procedural, courts consistently apply them in cases pending, including cases pending on appeal, when the statutes become effective, even though the underlying facts predate their effective dates. Courts apply new laws in that situation unless there is evidence of a legislative intent *not* to do so.

## III.  *Effect of new law*

Having concluded that chapter 424 applies in this case, we now consider the effect it has here.

### A.    *Prejudgment and postjudgment interest are awardable in this case*

As the county concedes, if the new law is applicable, it means interest is awardable. Section 3287, subdivision (c), states that both prejudgment and postjudgment interest are awardable in a case involving "a tax or fee claim." Assembly Member Eggman, the author of the legislation, wrote a letter to the Chief Clerk of the Assembly, defining the term "tax or fee claim": "In Assembly Bill 748 the phrases 'tax or fee claim' and 'tax or fee judgment' mean claims arising from the levy, collection or charge of a tax or fee. They do not include the distribution or allocation of those revenues between public entities." (Assem. Member Susan Talamantes Eggman, letter to E. Dotson Wilson, Chief Clerk of the Assembly, Assem. J. (Sept. 2, 2013, 2013-2014 Reg. Sess.) p. 3369.) This case falls within the definition. The PTAF is a fee charged by counties and paid by cities for the service of collecting and processing property taxes. The cities' lawsuit

17.

claimed that the county overcharged them for this fee. It is, therefore, a claim "arising from the … charge of a … fee."

Assembly Member Eggman's definition evidently is intended to exclude cases in which the dispute is over the amount of taxes allocated by a county to a city. If this case had involved a claim that the county had made an incorrect allocation and had given too much money to one city and too little to another, for instance, it would appear that Assembly Member Eggman's definition of a "tax or fee claim" would exclude it. But that is not what happened here. The cities simply claim that the county withheld too much for the PTAF.

The cities maintain that this case does not involve a tax or fee claim within the meaning of Assembly Member Eggman's letter because it *is* a claim for proper allocation of taxes between government entities. This is not correct. The cities' lawsuit did not claim the county incorrectly divided the tax money when it allocated that money to each city, for instance. Their only claim was that the county withheld too much for the PTAF. That, we conclude, is a "fee claim."

It is true that the PTAF is withheld from tax proceeds, so the county's incorrect PTAF calculation affected the distribution of tax revenue by the county to the cities. This impact on the distribution of tax revenue, however, is merely an incident of the method of collecting the PTAF. If counties collected the PTAF instead by sending bills to cities, it would be clear that the transaction involved the charge of a fee and not the allocation of tax revenue. We do not think the Legislature intended the method of collection to determine the applicability of interest.

A reference to this case in the legislative history reinforces our conclusion. A committee report discussing the fiscal impact of the legislation notes a potential reduction in revenue to government agencies that are plaintiffs in suits against other government agencies. This case, *City of Clovis v. County of Fresno*, is cited as an example in which the plaintiffs would receive less interest under the new law. (Sen. Com. on

18.

Appropriations, Fiscal Summary on Assem. Bill No. 748 (2013-2014 Reg. Sess.) as amended July 8, 2013, p. 1.)[5]  This reference confirms our view that this case involves a "tax or fee claim" and falls within the scope of new section 3287, subdivision (c).

### B.      New statutory rates of interest are applicable commencing January 1, 2014

As noted above, the trial court ordered both prejudgment and postjudgment interest on the cities' claims at the rate of seven percent per annum.  Chapter 424 provides a significant reduction in the rates of interest.  Based upon recent market yields, the new legislation provides for prejudgment interest at a nominal rate and postjudgment interest at a rate of just over two percent per annum.

Chapter 424 is a remedial or procedural statute, and as we have explained, that means it applies in a case in which the cause of action arose before its effective date, but which is still pending on appeal on its effective date.  Chapter 424 is also, however, a change in a statutory interest rate.  It has been settled law in this state for well over 100 years that, although a change in a statutory interest rate applies to a case pending on the effective date of the change, the new rate applies only to interest accruing on and after that date; the former rate applies to interest accruing before that date.

"The liability of the state to pay interest is 'purely statutory ….'" (*People v. Union Oil Co.* (1957) 48 Cal.2d 476, 480, citing *Gregory v. State of California* (1948) 32 Cal.2d 700, 703.)  "While an interest obligation based upon contract may resist change under constitutional guarantees, a statutory interest right for a particular period depends upon

---

[5]The author of the summary appears to have been under the mistaken impression that this litigation had already concluded and that the interest had already been paid.  The summary states:  "[I]n the case of *City of Clovis v. County of Fresno*, for example, the City of Clovis was paid $1.8 million in interest, but would have received a significantly lower payment under the interest rates proposed herein."  (Sen. Com. on Appropriations, Fiscal Summary on Assem. Bill No. 748 (2013-2014 Reg. Sess.) as amended July 8, 2013, p. 1.)

the law in effect at that time.  This has been the settled law in this state for many years."  (*People v. Union Oil Co., supra,* at p. 482, citing *White v. Lyons* (1871) 42 Cal. 279, 284-285 & *Gregory v. State of California, supra,* at p. 702.)

In *White v. Lyons, supra,* 42 Cal. at pages 284-285, the Supreme Court wrote:

"But, I think, the Court erred in fixing the rate of interest at ten per cent per annum up to the date of the judgment.  When the conversion occurred that was the rate fixed by statute in transactions of this character.  But the Act of March 30th, 1868, reduced the rate from ten to seven per cent per annum; and from the time when this Act took effect the interest should have been computed at seven per cent per annum.  In the absence of a contract for interest, it is only allowed as damages for a failure to pay the money due [citation]; and it is competent for the Legislature to fix the amount which shall be recovered.  But the Act reducing the rate was only prospective in its operation, and was not intended to take away or impair rights which had already accrued under the prior statute.  In *Bullock v. Boyle,* 1 Hoffman, N. Y. Ch. R., 294, the effect of statutes modifying the rate of interest is fully and elaborately discussed, and the authorities collated by the Vice Chancellor; and the conclusion at which he arrived is, that a change in the rate, as a general rule, operates only prospectively, and does not affect rights already accrued.… [¶]  The judgment is affirmed, except as to the rate of interest; and in respect to the computation of interest, the Court below is directed to modify the judgment by computing the interest at ten per cent per annum up to the time when the Act of March 30th, 1868, took effect, and thereafter at the rate of seven per cent per annum .…"

Since the new legislation applies to the present action, the applicable rate for postjudgment interest, effective January 1, 2014, is "equal to the weekly average one year constant maturity United States Treasury yield at the time of the judgment plus 2 percent .…"  (§ 3287, subd. (c).)

20.

## *DISPOSITION*

The judgment is modified to reflect that, effective January 1, 2014, the rate of postjudgment interest on the judgment in this action is reduced from seven percent to 2.39 percent.**6** The judgment is affirmed in all other respects.

The parties are to bear their own costs on appeal. The requests for judicial notice filed by amici curiae on June 7 and June 27, 2013, are granted. The requests for judicial notice filed by the county and the cities on December 2, 2013, are granted.

_____

Oakley, J.*****

WE CONCUR:

_____

Gomes, Acting P.J.

_____

Detjen, J.

_____

**6**Effective January 1, 2014, postjudgment interest on the judgment in this action is "equal to the weekly average one year constant maturity United States Treasury yield at the time of the judgment plus 2 percent .…" (§ 3287, subd. (c).) The judgment was entered in the trial court on March 18, 2010. The weekly average one year constant maturity United States Treasury yield as of March 12, 2010, the last date on which the rate was published prior to the entry of judgment, was the rate of .39 percent. (<http://www.federalreserve.gov/releases/h15/data.htm> [as of Jan. 10, 2014].) Thus, the rate of postjudgment interest on the judgment in this action is reduced from seven percent to 2.39 percent as of January 1, 2014. (See *Ehret v. Congoleum Corp.* (2001) 87 Cal.App.4th 202, 210; *Espinoza v. Rossini* (1967) 257 Cal.App.2d 567, 572-573; *Bellflower City School Dist. v. Skaggs* (1959) 52 Cal.2d 278, 281-282.)

*****Judge of the Superior Court of Madera County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.