Filed 6/21/16  Maon v. State Dept. of Hospitals CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| LINDA MAON et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>STATE DEPARTMENT OF STATE HOSPITALS et al.,<br><br>Defendants and Respondents. | F071093<br><br>(Super. Ct. No. 12CECG03025)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Jeffrey Hamilton and Dale Ikeda, Judges.

Linda Maon, in pro. per., for Plaintiff and Appellant.

Jaffar Oliver, in pro. per., for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Julie Weng-Gutierrez, Assistant Attorney General, Ismael A. Castro and Lisa A. Tillman, Deputy Attorneys General, for Defendants and Respondents.

-ooOoo-

The plaintiffs appeal from an order sustaining a demurrer to their third amended complaint, which attempted to allege violations of their right to freely exercise their religion, their right to equal protection, and their rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 United States Code section 2000cc et seq.

Plaintiffs are a patient detained at the Coalinga State Hospital and his fiancée. They asked hospital officials to allow the patient to wear a tuxedo during their Buddhist wedding ceremony, which was to be conducted in the visiting room of the Coalinga State Hospital. Their request was denied. They alleged the denial was based on a deliberate misinterpretation of the written administrative directives pertaining to weddings and patient clothing.

Under the well-established rules governing judicial review of an agency's interpretation of its own regulations and directives, we conclude that the hospital officials interpreted the administrative directives in a reasonable manner and, therefore, we must defer to that interpretation. (*In re Cabrera* (2012) 55 Cal.4th 683, 687, 690.) We further conclude that hospital officials' interpretation and application of the administrative directives did not violate plaintiffs' constitutional or statutory rights. Consequently, the trial court properly sustained the demurrer without leave to amend.

We therefore affirm the judgment.

## FACTS

### *The Parties*

Plaintiff Jaffar Oliver is an African-American male who is being held at Coalinga State Hospital as a civil detainee under the Sexually Violent Predator Act (SVPA), Welfare and Institutions Code section 6600 et seq. He alleges that he is a ward of the California Department of State Hospitals (DSH). Plaintiff Linda Maon is Oliver's fiancée. She is a Cambodian-American female and a resident of Fresno County.

Plaintiffs' most recent pleading lists DHS among the defendants in its caption, but names only Audrey King, director of the Coalinga State Hospital, and Cliff Allenby, executive director of DSH, as defendants in the text of their allegations. The trial court's judgment of dismissal refers to both individuals and the DSH.

*Administrative Directs*

Effective July 10, 2012, Coalinga State Hospital adopted a revised version of Administrative Directive No. 618, marriage of patients (AD 618), to replace the prior version, which was dated May 12, 2011.  AD 618 requires a patient to submit a written request for marriage planning that identifies the patient's fiancée and any specific wedding plans.  AD 618 states that all expenses of the wedding are the responsibility of the patient.  It also states, "Costs of flowers, decorations, refreshments, photographs, *special clothing*, etc. and fee, if any, to the person solemnizing marriage, shall be paid either by the patient through the Trust Office, the fiancée, and/or family member."  (Italics added.)

Part VII of AD 618 addresses the wedding ceremony and states that (1) marriages may take place in the visiting room, (2) ceremonies shall not be combined with any other social or therapeutic activity, (3) use of the visiting room must be scheduled through the administration and must not conflict with activities regularly scheduled for the room, (4) gifts must not be brought inside the secured area, (5) ceremony items must be removed from the grounds when the visitors leave, and (6) normal security procedures, including search, will be in effect for all patients and visitors.  AD 618 cross references Administrative Directive No. 738, patient visiting guidelines (AD 738).

AD 738 (rev. Feb. 3, 2012) states: "Individuals are required to wear only state-issued clothing."  The provision was modified in AD 738 (rev. Nov. 6, 2013) to state: "Patients are required to wear only state-issued clothing and must wear their state-issued identification badge."[1]

---

[1]    Oliver referred to this revision in oral argument, stating it was the only formal change in the relevant administrative directives and regulations that occurred after the denial of his request to wear special clothing during the wedding ceremony.  The absence of a formal change in the administrative directive relating to the wearing of special clothing at a visiting room wedding ceremony, when joined with the allegations about

3.

The description under this heading is based on the facts alleged in plaintiffs' third amended complaint.

On July 22, 2012, plaintiffs had a predetermined date for their marriage ceremony, which was to be held in the visiting room of the Coalinga State Hospital. Prior to the scheduled date, plaintiffs requested approval to wear "special clothing" that they describe as "religious garb according to their religious beliefs in the Buddhist faith." Plaintiffs believe that "the request for 'special clothing' was made with the complete support of [AD] 618."

Plaintiffs submitted an informal letter request to Hospital Director King, citing part VI.A.2 of AD 618 and asserting that provision allowed an individual to have marriage plans that include wearing a "personal choice of clothing" at the wedding. King, who had the final authority to grant or deny the request, denied it. As result, Oliver alleges he "was refused permission to wear a religious outfit, a tuxedo[,] at the ceremony." Plaintiffs contend this denial violated their First Amendment rights and their right to equal protection under the Fourteenth Amendment.

In 2013,[2] Oliver filed a patient's complaint because plaintiffs were unable to convince the administration to relent on the issue. The patient's complaint asserted there had been deliberate error in the interpretation of AD 618 and AD 738, "which bear no relationship to the specificity of clothing worn at the marriage ceremony." Plaintiffs

how AD 618 was applied in the past, relates to Oliver's claims of different or discriminatory treatment. (See pt. III, *post*.)

[2] Plaintiffs allege the patient's complaint was filed March 26, 2013. The materials included in their appellants' appendix includes a March 26, 2013, memorandum to Oliver from patients' rights advocates that refers to his January 30, 2013, complaint regarding not being able to wear "special clothing" for his planned wedding in the visiting area. The memorandum states that Welfare and Institutions Code section 7232 and California Code of Regulations, title 9, section 890 address the clothing worn by patients.

stated that "administration cannot arbitrarily deny a right written within the Administrative Directive."

Plaintiffs have interpreted AD 618 to mean (1) when it comes to "special clothing," it is the responsibility of the patient and his fiancée to supply the clothing the groom and bride will wear and (2) there is nothing on the subject of security as a major concern relating to the type of clothing. In plaintiff's view, "it is unavoidably evident that there was and is no security restrictions on the style, color, or religious affiliation [of] the individuals [with] respect to … the clothing they wear at the wedding." Based on this view of the directives and institutional security, plaintiffs alleged that King's denial was an arbitrary and capricious decision unrelated to legitimate governmental interest about security.

## PROCEEDINGS

In September 2012, plaintiffs, acting in pro. per., filed a civil complaint and obtained a waiver of court fees. In June 2013, they filed a handwritten document labeled "First Amended Civil Complaint" against DHS that alleged Oliver requested permission to purchase a tuxedo for a marriage ceremony to be conducted in the visiting room of the Coalinga State Hospital, but his request was denied. Plaintiffs alleged the denial was discriminatory because three other patients had been allowed to wear their own clothing during wedding ceremonies.

The allegation of discrimination was supported by written statements signed by three other patients and attached to the first amended complaint. The wedding ceremonies referred to in those statements had been held in 2008 and 2009. The patient married in January 2008 stated, "I was able to wear my own clothes (dress) that my wife brought." The patient married in May 2009, stated that he had to give his unit social worker a list of what kind of food, drinks and clothes to be worn, but did not identify the clothes he wore for the wedding ceremony. A third statement asserted that two other

5.

patients attended the wedding and "we were all allowed to wear our personal clothing such as suits leisure wear."

In August 2013, DSH filed an amended motion to quash service of the summons for failure to provide a notice and acknowledgment of receipt form. The motion asserted the first amended complaint was served by mail upon DHS's litigation coordinator without the required notice and acknowledgment. The motion was not opposed. In September 2013, the trial court granted the motion to quash.

*Second Amended Complaint*

In November 2013, Oliver filed a pleading labeled "42 U.S.C. §1983 Amended Civil Rights Complaint" that named Audrey King, director of the Coalinga State Hospital, and Cliff Allenby, executive director of DSH, as defendants. The amended complaint alleged AD 618 had been misapplied to Oliver's request to wear his own clothing at the wedding ceremony. It also alleged that Oliver "was denied the right to practice his religious customs of marriage, which is to dress in garments of his Hinduistic religious beliefs towards marriage," and alleged that other patients had been allowed to dress as they chose.

In March 2014, a demurrer to the second amended complaint was filed. The demurrer stated that Oliver had failed to state a cause of action for a violation of the First or Fourteenth Amendment, the equal protection clause, or 42 United States Code section 1983. Oliver filed a written objection to the demurrer. The trial court issued a tentative ruling to sustain the demurrer with leave to amend.

In June 2014, the court adopted its tentative ruling. The court determined the doctrine of judicial estoppel barred the religious-based allegations in the second amended complaint. The court stated that the first amended complaint alleged the denial centered on Oliver's request to wear a tuxedo and the second amended complaint discarded the allegations about the tuxedo and alleged Oliver's request was "to wear 'special clothing'

6.

which would be religious garb according to his religious beliefs in the H[i]ndu faith."**3**
The trial court stated the first amended complaint's identification of the subject clothing as a tuxedo was clear and a conclusive concession of the truth of the matter admitted. The trial court also addressed Oliver's other constitutional and statutory claims.

*Third Amended Complaint*

In July 2014, plaintiffs filed a third amended complaint, which was erroneously labeled "Second Amended Civil Rights Complaint." This pleading addressed the apparent contradiction in the earlier pleadings about religious garb and a tuxedo by alleging hospital officials had not sought an alternate "method to allow the wearing of a religious tuxedo for him and a religious gown similar to the tuxedo." This allegation is not entirely clear, but plaintiffs may be asserting that Oliver wearing a Buddhist-type tuxedo during the wedding has religious significance. During oral argument, Oliver stated that his original request involved a Buddhist-type tuxedo and Buddhist attire for his fiancée and, subsequently, as to his clothing for the ceremony, he proposed wearing a regular tuxedo as a compromise. Oliver also stated that he never received a direct answer from the administration on his proposed compromise.

The third amended complaint addressed how AD 618 should be interpreted. Some of these allegations were described earlier in the last paragraph under the heading, "*The Wedding Plans*." Plaintiffs also alleged AD 618 is perfectly written to avoid misreading and sets forth no security restrictions on the style, color or the individual's religious affiliation of clothing worn at a wedding. (See pt. II.B, *post* [meaning of AD 618].)

---

**3** During oral argument, Oliver asked this court to liberally construe his attempts to plead a constitutional claim and not hold mistakes against him, such as the references in the second amended complaint to the Hindu faith. He states the mistakes were made because he had relied on assistance from another detainee who knew little more about court procedures and pleadings than he did at the time.

In September 2014, defendant Allenby filed a demurrer to the third amended complaint. In November 2014, plaintiffs filed an opposition that attributed the demurrer to both King and Allenby, along with an attached memorandum of points and authorities. Plaintiffs argued that they had stated constitutional and statutory causes of action.

The trial court issued a tentative ruling stating it would sustain the demurrers as to the entire third amended complaint without leave to amend and dismiss the complaint as to Allenby and King. On November 13, 2014, the trial court issued a minute order adopting the tentative ruling as the order of the court.

On November 20, 2014, defendants King and Allenby filed an ex parte application requesting the court "dismiss them from this action." That same day, the trial court entered a minute order that dismissed the matter without prejudice.

In January 2015, Oliver and Maon each filed a notice of appeal. In June 2015, a judgment was "entered in favor of defendants King, Allenby and Department of State Hospitals, Coalinga." The judgment referred to a November 20, 2014, order dismissing the matter without prejudice.

## DISCUSSION

### I. STANDARD OF REVIEW

Appellate courts independently review the ruling on a general demurrer and make a de novo determination of whether the pleading "alleges facts sufficient to state a cause of action under any legal theory." (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) Generally, appellate courts "give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]" (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865 (*Dinuba*).) The demurrer is treated as admitting all material facts properly pleaded, but does not admit the truth of contentions, deductions or conclusions of law. (*Ibid*.; see Code Civ. Proc., § 452 [pleading "must be liberally construed, with a view to substantial justice between the parties"].)

When a demurrer is properly sustained on the ground that the complaint fails to state facts sufficient to constitute a cause of action, and leave to amend is denied, "we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of [demonstrating] such reasonable possibility is squarely on the plaintiff."  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  The requisite demonstration of a reasonable possibility of curing the defect by amendment may be made by the plaintiff for the first time on appeal.  (Code Civ. Proc., § 472c, subd. (a); *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 746-747 [the issue of leave to amend is always open on appeal, even if not raised by the plaintiff].)[4]

## II.  INTERPRETING AND APPLYING ADMINISTRATIVE DIRECTIVES

The starting point for plaintiffs' claim that wrongs were committed is their "legal theory" (*Dinuba, supra,* 41 Cal.4th at p. 870) that defendants misinterpreted AD 618 and AD 738 and then used their misinterpretation to deny Oliver's request to wear a tuxedo during the wedding ceremony.  Consequently, we begin by addressing this legal theory about the proper interpretation of the administrative directives.

### A.  <u>Legal Principles</u>

#### 1.  *Legal Context*

The legal hierarchy above administrative directives consists of (1) the United States Constitution, (2) other federal law, (3) the California Constitution, (4) California statutes, and (5) the provisions in the California Code of Regulations.  This hierarchy plays a role in this case because laws other than administrative directives address

---

**4**  Because the law allows a plaintiff to show the ability to amend for the first time on appeal, defendants' motion to strike portions of appellants' appendices, which asserted certain documents had not been presented to the trial court, is denied.

9.

detainee clothing and the directives must be interpreted to operate in harmony with that higher authority.

### 2. *Requirements Imposed by Statute and Regulation*

There are no federal or state constitutional provisions that address what clothing a detainee may or may not wear. The subject is addressed by California statute. Welfare and Institutions Code section 7232, subdivision (a) directs the State Department of Mental Health to issue a state hospital administrative directive that requires patients within the secured perimeter of each state hospital "to wear clothing that enables these patients to be readily identified." In accordance with this statute, section 890 of title 9 of the California Code of Regulations states: "The facility director shall specify the types of clothing that are authorized to be worn by non-LPS patients in the facility." "Non-LPS" refers to placement in a facility pursuant to legal authority other than the Lanterman-Petris-Short Act, Welfare and Institutions Code section 5000 et seq. (9 Cal. Code Regs., § 881, subd. (o).) Thus, a person detained under the SVPA is a non-LPS patient.

### 3. *Rules for Interpreting Ambiguous Regulations or Directives*

When a state agency promulgates quasi-legislative rules as part of the lawmaking power delegated to it by the Legislature, those rules are subject to a very limited judicial review. (*In re Cabrera*, *supra*, 55 Cal.4th at p. 687.) In this case, the administrative directives addressing patient clothing clearly were adopted pursuant to a legislative delegation of authority. Welfare and Institutions Code section 7232, subdivision (a) specifically mandates the adoption of an administrative directive that requires patients to wear clothing that enables them to be readily identified. Therefore, we conclude that the rules of law governing the interpretation of quasi-legislative rules apply to the provisions of AD 618 and AD 738 that address patient clothing. In accordance with those rules, this court must defer to the hospital officials' interpretation of their directives unless that interpretation is clearly unreasonable. (*In re Cabrera*, *supra*, at p. 690.)

10.

B.     Meaning of AD 618

Plaintiffs' third amended complaint sets forth their interpretation of part VI.A.2 of AD 618. They assert it "allows an individual patient to have marriage plans that include[] 'personal choice of clothing' to wear at the wedding." Furthermore, plaintiffs contend AD 618 says nothing on the subject of security and, as a result, there are no security restrictions on the style, color or religious affiliation of clothing worn by a patient at a wedding.

*1.     Actual Wording of AD 618*

First, we note that plaintiffs put quotation marks around the phrase "personal choice of clothing" as though that phrase actually appears in part VI.A.2 of AD 618. Our review of the version of AD 618 available in the record has not located a version that contains that phrase. Instead, part VI.A.2 of the version of AD 618 that became effective on July 10, 2012, states:

> "Costs of flowers, decorations, refreshments, photographs, *special clothing*, etc. and fee, if any, to the person solemnizing marriage, shall be paid either by the patient through the Trust Office, the fiancée, and/or family member." (Italics added.)

Therefore, to the extent plaintiffs' interpretation of AD 618 is based on the belief that AD 618 contains the phrase "personal choice of clothing" and thereby allows patients to personally choose their attire, their interpretation is incorrect because that phrase does not appear in AD 618.

Second, plaintiffs' contention that AD 618 says nothing about security is wrong. Part VII.E of AD 618 states, "Normal security procedures, including search, will be in effect for all patients and visitors." It appears that hospital officials have interpreted "[n]ormal security procedures" as including the rules applicable to patient clothing, an interpretation that is not clearly unreasonable. Therefore, we will defer to that interpretation. (*In re Cabrera*, *supra*, 55 Cal.4th at p. 690.)

11.

### 2. *Ambiguity in AD 618*

There is no question that AD 618 uses the term "special clothing" in connection with wedding ceremonies allowed in the visiting room of Coalinga State Hospital. However, there are at least two ambiguities connected to this term.

The first ambiguity is that AD 618 does not state *who* may wear the special clothing and who may not. Consequently, we cannot determine whether "special clothing" includes items that might be worn by the patient or, alternatively, is limited to items worn only by other members of the wedding party, such as the spouse who is not a patient or the person solemnizing the marriage.

The second ambiguity results from term "special clothing" itself. If "special clothing" was intended to include items that might be worn by the patient at the wedding, then it is possible that the word "special" means *in addition to the patient's regular clothing*. For example, headwear such as a yarmulke or Kufi cap might meet this interpretation of "special" because it can be worn with (not in lieu of) hospital-issued clothing.

These two ambiguities have not been explicitly addressed and resolved by hospital officials in the documents before this court. However, the March 26, 2013, memorandum to Oliver from the patients' rights advocates, when read in the context of Oliver's request to wear a tuxedo during the wedding ceremony, demonstrates that AD 618 was interpreted so that Oliver's tuxedo was not deemed "special clothing." Thus, regardless of how the two ambiguities are resolved, it is clear that hospital officials interpreted AD 618 to mean that a tuxedo, when worn by a patient, did not qualify as "special clothing" allowed to be worn during a wedding ceremony performed in the visiting room of the Coalinga State Hospital.

Pursuant to the rule of law governing judicial review of agency rules and regulations, our review of the agency's interpretation of its own directives does not consider whether the agency has adopted the best or most logical interpretation. (See *In*

*re Cabrera*, *supra*, 55 Cal.4th at p. 690.) Instead, we determine whether the hospital officials' interpretation of their directives was clearly unreasonable. (*Ibid*.) If their interpretation is not clearly unreasonable, we must accept that interpretation. (*Ibid*.)

Accordingly, the issue presented is whether defendant's interpretation of AD 618 and the term "special clothing" as excluding a tuxedo worn by a patient is clearly unreasonable. If the interpretation of "special clothing" to exclude a tuxedo worn by a patient "falls within the range of reasonable interpretations," it "is entitled to judicial deference." (*Menefield v. Foreman* (2014) 231 Cal.App.4th 211, 218.)

The parties appear to agree that a tuxedo is "clothing," which is a reasonable interpretation of that word. Therefore, our inquiry focuses on the meaning of the word "special." Our examination of the dictionary definition of "special" includes "peculiar" or "unique". (See Webster's New World Dict. (2d ed. 2002) p. 611.); *Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1121-1122 [courts may refer to the dictionary definition of a word to ascertain its ordinary, usual meaning].) Based on this definition, the term "special clothing" would appear to apply to a tuxedo that is worn by a patient solely for purposes of the wedding ceremony. However, our inquiry does not end with dictionary definitions of the words. The term "special clothing" also must be interpreted in a manner compatible with Welfare and Institutions Code section 7232, subdivision (a), which requires patients to wear clothing that enables them "to be readily identified." In addition, it must be interpreted in context—that is, in harmony with the other provisions of AD 618 that limit the type of clothing allowed.

In light of Welfare and Institutions Code section 7232, subdivision (a), it is reasonable to interpret "special clothing" to exclude clothing that would make it more difficult to "readily identif[y]" patients. As applied to the facts of this case, it is reasonable to conclude that a person wearing a tuxedo might not be readily identifiable as a patient. (*In re Cabrera*, *supra*, 55 Cal.4th at p. 690.) In addition, any interpretation given to the term "special clothing" must be compatible with the provision in AD 618

13.

stating that normal security procedures will be in effect for all patients and visitors. This provision about security justifies a narrower interpretation of what constitutes allowable "special clothing." Furthermore, the existence of this provision shows plaintiffs' argument that there are *no* security restrictions on the style, color, or other aspects of clothing worn by a patient at a wedding is not accurate.

Accordingly, we conclude that hospital officials acted reasonably and in accordance with applicable legal principles when they interpreted AD 618's reference to "special clothing" in a manner that did not allow Oliver to wear a tuxedo during a wedding conducted in the visiting room at Coalinga State Hospital. It follows that plaintiffs will not be able to prove their contention that AD 618 "was intentionally and deliberately misapplied by" defendants and other hospital personnel. Plaintiffs' assertion that AD 618 was "misapplied" is a conclusion of law because the proper interpretation and application of AD 618 to the historical facts set forth in their third amended complaint presents a question of law. (*Communities for a Better Environment v. State Water Resources Control Bd.* (2003) 109 Cal.App.4th 1089, 1104 [interpretation of a regulation is a question of law]; see *Dinuba*, *supra*, 41 Cal.4th at p. 865 [a demurrer admits properly pleaded facts, but does not admit the truth of contentions or conclusions of law].) In accordance with the rules of law set forth in *In re Cabrera*, *supra*, 55 Cal.4th 690, that question of law must be answered in favor of the interpretation adopted by defendants.

Therefore, plaintiffs' "legal theory" (*Dinuba, supra,* 41 Cal.4th at p. 870) that defendants misinterpreted the administrative directives must be rejected because there was no misinterpretation. Consequently, plaintiffs have failed to state a statutory or constitutional cause of action based on that legal theory.[5]

---

[5] Plaintiffs' claim that the administration committed a legal wrong by *changing* its interpretation of the administrative directives is addressed in part III.C, *post*. (See

14.

III.    EQUAL PROTECTION CLAIM

    A.    <u>Plaintiffs' Allegations of Discrimination</u>

Plaintiffs contend "they were denied the right to practice a religious custom of marriage, which is to dress in the sort of clothing of the Buddhist religious beliefs toward the marriage custom." (Boldface and fn. omitted.) They allege that there have been other patients who were allowed to marry dressed in Muslim garb, Native-American garb, and suits, which was the type of clothing they chose. Plaintiffs allege defendants deliberately misapplied AD 618 and AD 738 "in order to prevent them from performing a Buddhist wedding ceremony at the facility." Plaintiffs also alleged defendants have "discriminate[d] against the wearing of a tuxedo at a wedding." They refer to a "change in policy towards Plaintiffs' Buddhist wedding ceremony," stating "it certainly stinks of the odor of 'identifiable class discrimination' with the intention of discouraging others who wish to wed." (Boldface omitted.)

We interpret these allegations as an attempt to state an equal protection claim on the grounds that hospital officials treated plaintiffs differently (i.e., discriminated against them) because of their religious beliefs.

    B.    <u>Elements of Equal Protection Claim</u>

Both the federal and state constitutions include equal protection guarantees. "No State shall … deny to any person within its jurisdiction the equal protection of the laws." (U.S. Const., 14th Amend., § 1.) Similarly, article I, section 7, subdivision (a) of the California Constitution provides: "A person may not be … denied equal protection of the laws …." The equal protection clause has been summarized as "essentially a direction that all persons similarly situated should be treated alike." (*Cleburne v. Cleburne Living Center*, *Inc.* (1985) 473 U.S. 432, 439.)

---

generally, 3 Admin. L. & Prac. (3d ed. 2016) § 10:26[3][f] [agency's interpretations of its own rules and consistency with past policies].)

15.

The elements of an equal protection claim have been addressed by the California Supreme Court:

> "'The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' [Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged.' [Citation.]" (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.)

When a showing has been made that two similarly situated groups were subject to disparate treatment, the next element of a meritorious equal protection claim relates to whether the government had a sufficient reason for distinguishing between the two groups. (*In re Brian J.* (2007) 150 Cal.App.4th 97, 125.)

C.     Similarly Situated and Unequal Treatment

Plaintiffs' allegations identify themselves as practicing the Buddhist religion, which the United States Supreme Court has recognized as a religion protected by the First and Fourteenth Amendments. (*Cruz v. Beto* (1972) 405 U.S. 319, 322.) Therefore, we conclude that plaintiffs have alleged they are members of a protected class for purposes of the equal protection clause.

Next, we consider whether plaintiffs have adequately alleged that they were treated in an unequal manner compared to other similarly situated groups. Plaintiffs attempt to state this part of an equal protection claim by alleging in paragraph 5 of their third amended complaint that there have been other patients allowed to marry dressed in Muslim garb, Native-American garb or other types of clothing they chose. The deficiency in this allegation relates to timing. It refers to past practices and does not address whether AD 618 *currently* is being applied differently to members of different religious groups. The deficiency is not cured by referring to the three written statements attached as exhibits to plaintiffs' first amended complaint. Those statements from other patients refer to weddings that occurred in 2008 and 2009. Consequently, they do not

establish that Buddhists were treated differently back then or, more importantly for plaintiffs, establish that Buddhists are being treated differently now.

Furthermore, plaintiffs have not demonstrated that they could amend their complaint to allege that Buddhists currently are being treated differently in terms of the clothing they are permitted to wear at wedding ceremonies conducted at Coalinga State Hospital. Indeed, plaintiffs have addressed the timing of the alleged differences in DHS's approach to wedding attire by referring to a change in policy. Plaintiffs alleged that there has been a "change in policy towards [their] Buddhist wedding ceremony," but have failed to allege facts showing the change in policy was directed at Buddhists and is not applied to other religious groups. Therefore, plaintiffs' allegations fail to set forth sufficient facts to establish that similarly situated groups were treated in an unequal manner. In short, being similarly situated involves a timing aspect, and Buddhists in 2012 cannot be compared to other groups in 2008 and 2009 because the timeframes are dissimilar.

Plaintiffs' third amended complaint asserts that defendants' change in the policy regarding appropriate wedding attire was itself a repudiation of constitutional rights and was the moving force of the constitutional violation. This assertion implies that defendants violated the equal protection clause by changing the way AD 618 was interpreted and applied.

First, changes in the way administrative regulations and directives are interpreted and applied are not automatically void or illegal. Instead, when an agency's interpretation of its own regulation or directive conflicts with prior interpretations, that inconsistency is a factor relevant to how much deference courts give to the agency's current interpretation. (*Christopher v. SmithKline Beecham Corp.* (2012) ___U.S. ___, ___ [132 S.Ct. 2156, 2166]; see 3 Admin. L. & Prac., *supra,* § 10:26 [interpretations and consistency with past policies].) Second, the change in the way defendants are applying AD 618 and AD 738 to weddings performed in the visiting room is entitled to deference

17.

under the circumstances of this case because the change is consistent with the Welfare and Institutions Code section 7232, subdivision (a) and section 890 of title 9 of the California Code of Regulations. In contrast, the earlier, more relaxed approach to the clothing requirements does not appear to have complied with the statute or the regulation. Consequently, we conclude the current interpretation is entitled to deference and is correct under the not-clearly-unreasonable standard described in *In re Cabrera*, *supra*, 55 Cal.4th at page 690.[6]

As a result, plaintiffs' allegation about a change in policy does not state an equal protection claim. So long as a change is applied equally across all groups of patients, no violation of the right to equal protection has occurred. In this case, plaintiffs have not alleged the change of policy has been unequally applied. For example, they have not argued that they can amend to allege that the current interpretation is being applied to some groups and not to others.

To summarize, plaintiffs have not alleged facts sufficient to state a cause of action for a violation of equal protection. In addition, they have not carried their burden of demonstrating that they could amend to cure the defects in their allegations.

IV.    FIRST AMENDMENT

A.    Legal Principles

Inmates retain those First Amendment rights that are not inconsistent with legitimate penological objectives. (*Pell v. Procunier* (1974) 417 U.S. 817, 822.) A plaintiff attempting to state a First Amendment claim based on a violation of the free

---

[6]    During oral argument, Oliver argued that there must be a *formal* change in the administrative directives that *explicitly* recognizes the new way the administration is treating requests to wear special clothing at wedding ceremonies in the visiting room. We reject this argument because administrative agencies are allowed to change the way they interpret and apply a regulation even though the text of the regulation remains the same. (See *Christopher v. SmithKline Beecham Corp.*, *supra*, ___U.S. ___, ___ [132 S.Ct. 2156, 2166].)

18.

exercise of religion must allege a defendant (1) burdened the practice of plaintiff's religion by preventing him or her from engaging in a sincerely held religious belief and (2) did so without any justification reasonably related to legitimate penological interests. (*Shakur v. Schriro* (9th Cir. 2008) 514 F.3d 878, 884.)

In *Turner v. Safley* (1987) 482 U.S. 78 (*Turner*), the United States Supreme Court set forth four factors to be balanced in determining whether a prison regulation is reasonably related to legitimate penological interests. Those factors are (1) whether there was a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether an alternative means of exercising the fundamental right remained open to the prisoner; (3) how accommodating the asserted constitutional right would impact the guards and other inmates, and the allocation of prison resources generally; and (4) whether there is an absence of ready alternatives to the regulation in question. (*Turner*, *supra*, 482 U.S. at pp. 89-91; *Bailey v. Loggins* (1982) 32 Cal.3d 907, 920; see *Boles v. Neet* (10th Cir. 2007) 486 F.3d 1177, 1182-1183 [collecting cases where constitutional challenges to prison regulations restricting use of religious clothing were denied based on concern the clothing could be used to smuggle contraband].) Plaintiffs acknowledge that the *Turner* test extends beyond the prison context and applies to individuals who have been detained under the SVPA.

B.    Analysis

1.    *Sincerely Held Religious Belief*

The trial court concluded plaintiffs were estopped from alleging that wearing a tuxedo during a wedding ceremony was a sincerely held part of plaintiffs' Buddhist beliefs. On appeal, defendants argue the trial court properly applied the estoppel doctrine.

19.

Plaintiffs appear to be asserting two religious beliefs. The broader of the two beliefs involves the wedding ceremony and marriage. Plaintiffs' pleading asserts there "is a constitutional right to have a wedding ceremony within the facility; regardless of the type of clothing the couple chose to wear at the wedding." We conclude plaintiffs have alleged sufficient facts to establish that a wedding ceremony and marriage is an exercise of religion. (See *Turner*, *supra*, 482, U.S. at p. 96 ["many religions recognize marriage as having a spiritual significance"]; see also, *In re Marriage Cases* (2008) 43 Cal.4th 757, 818, 829 [right to marry is a protected liberty interest].)

The narrower religious belief involves clothing and plaintiffs' allegation that a tuxedo is a religious outfit for purposes of a Buddhist wedding ceremony. We need not address whether wearing a tuxedo at a wedding is a belief that is both religious and sincerely held by plaintiffs because the second element of a free-exercise-of-religion claim is missing.

### 2. *Reasonable Relationship to Legitimate Penological Interests*

Defendants contend the clothing requirements set forth in AD 618 and AD 738 are reasonably related to the legitimate penological interest of providing secure confinement for detainees under the SVPA in order to protect the public. We agree.

DSH has a legitimate penological interest in requiring detainees "to wear only state-issued clothing." (AD 738, pt. V.C.1.) Wearing such clothing "enables these patients to be readily identified." (Welf. & Inst. Code, § 7232, subd. (a).) Clothing that enables patients to be readily identified is rationally related to maintaining order and preventing escape from detention.

Plaintiffs contend there are ready alternatives available to defendants, such as requiring patients to display their identification cards, which is the procedure used in the patient dining room when patients request their meals. We conclude that the alternative of wearing a patient identification card is not a ready alternative to a clothing

requirement. An identification card could be discarded or placed in a tuxedo pocket and, as a result, the card would not provide an easily visible way of distinguishing the tuxedo-wearing patient from a visitor. Consequently, we conclude plaintiffs have failed to allege facts that, if true, would establish there is no reasonable relationship between the clothing requirement and DHS's legitimate interest in having patients readily identifiable.

As to plaintiffs' claim that defendants have unreasonably burdened their constitutional right to have a wedding ceremony within the facility, plaintiffs have not alleged that they have been prevented from getting married with Oliver wearing state-issued clothing. Therefore, an alternative way to participate in a ceremony and become married is available to plaintiffs. Consequently, plaintiffs have not alleged enough facts to show that defendants have burdened the practice of their religion by preventing them from engaging in a wedding ceremony. In addition, they have not shown that they are able to amend to cure this deficiency.

V.   DUE PROCESS

The request for relief in plaintiffs' third amended complaint seek a declaratory judgment stating that defendants or their agents (1) caused plaintiffs to "suffer a violation of their due process rights according to the Equal Protection Clause" and (2) "denied Plaintiffs the de minimis procedural due process rights guaranteed under Article I, section 17, of California's Constitution, and the First Amendment." Despite these references to due process, none of the four enumerated causes of action in plaintiff's third amended complaint explicitly states it is alleging a due process violation. Furthermore, plaintiffs' opening appellate brief does not include a section arguing that they have alleged sufficient facts to state a due process violation. Instead, plaintiffs argue that they have alleged (1) a violation of the First Amendment, (2) a violation of the equal protection clause, (3) a claim under 42 United States Code section 1983, and (4) a claim under the RLUIPA.

Based on the foregoing, we conclude that plaintiffs have abandoned due process as a separate legal theory or cause of action. (See Cal. Rules of Court, rule 8.204(b) [each brief must state each point under a heading or subheading].) Accordingly, we will not discuss the arguments in defendants' appellate brief as to why plaintiffs have failed to allege sufficient facts to state a due process claim.

## VI. STATUTORY CLAIMS

### A. RLUIPA

The RLUIPA is a federal statute that prohibits a government from imposing a substantial burden on the religious exercise of a person confined to an institution, unless the government demonstrates that the burden imposed furthers a compelling governmental interest, and is the least restrictive means of furthering that compelling governmental interest. (42 U.S.C. § 2000cc-1, subd. (a); see 49 Cal.Jur.3d (2010) Penal and Correctional Institutions, § 112, p. 193.) The RLUIPA does not give the accommodation of religious observances priority over an institution's need to maintain order and safety. (*Ibid*.; see *Cutter v. Wilkinson* (2005) 544 U.S. 709, 722.)

Plaintiffs may pursue a RLUIPA claim in state court. State court jurisdiction is compatible with federal interests and, therefore, state courts have concurrent jurisdiction over RLUIPA causes of action. (*In re Garcia* (2012) 202 Cal.App.4th 892, 901 [writ of habeas corpus issued directing institution to permit petitioner to participate in its existing kosher meals program].)

Plaintiffs bear the initial burden of showing (1) that they seek to engage in an exercise of religion, and (2) that the challenged governmental decision or policy substantially burdens that exercise of religion. (*In re Garcia*, *supra*, 202 Cal.App.4th at p. 901; see Brown, *Ensuring the Application of RFRA and RLUIPA in Pro Se Prisoner Litigation* (2014) 41 Ohio N.U. L. Rev. 29, 32 [by design, elements necessary to state a claim under RLUIPA are similar to those of a free exercise claim].) Here, plaintiffs'

22.

allegations are sufficient to show that a wedding ceremony or marriage is an exercise of religion. (See pt. IV.B.1, *ante*.) Furthermore, despite the absence of specific allegations of fact on the subject, we will assume for purposes of discussion that Oliver's wearing of a tuxedo during the wedding amounts to engaging in a religious belief. (Cf. *Smith v. Thompson* (E.D.Ky. 2009) 638 F.Supp.2d 754, 758 [evidence did not establish a central role for a wedding band in the exercise of inmate's religion; court denied request for preliminary injunction under RLUIPA to enjoin policy of prohibiting inmates from wearing wedding band with stones or gems].)

Based on the foregoing principles and assumption, the question presented is whether the implementation of AD 618 and AD 738 "substantially burdened" the exercise of religion. (See *Turner*, *supra*, 482 U.S. at p. 95 ["right to marry, like many other rights, is subject to substantial restrictions as a result of incarceration"].)

One example of a case addressing whether an institution's policy imposed a substantial burden on religious beliefs involving marriage is *Fuller v. Cate* (9th Cir. 2012) 481 Fed.Appx. 413. In that case, the Ninth Circuit concluded that the inmate had failed to allege a cause of action under RLUIPA. (*Fuller v. Cate, supra,* 481 Fed.Appx. 413.) The record showed that the prison's prohibition of conjugal visits for inmates serving life sentences without parole did not substantially burden the inmate's ability to enter into a valid Islamic marriage. (*Ibid.*)

In this case, plaintiffs have not alleged facts showing that the clothing directive would require them to abandon the wedding ceremony. (See *Warsoldier v. Woodford* (9th Cir. 2005) 418 F.3d 989, 994 [policy imposes a substantial burden if it puts significant pressure on inmate to abandon religious beliefs].) Furthermore, the materials addressing Buddhist practices that are included in the record of this case do not show that preventing Oliver from wearing a Buddhist or regular tuxedo during the wedding ceremony imposes a substantial burden on any Buddhist religious belief about wedding

23.

attire. For example, the materials do not state that a tuxedo is the required wedding attire for the bridegroom in a Buddhist ceremony.

Therefore, we conclude that plaintiffs have failed to allege a violation of the RLUIPA.

B.   Civil Rights

Plaintiffs' other statutory claims are based on 42 United States Code section 1983, which authorizes civil actions to redress deprivations of any rights "secured by the Constitution and laws." In this case, plaintiffs have not adequately alleged a violation of a constitutional right. As a result, they have not stated a cause of action under 42 United States Code section 1983 and we need not address whether other elements of such a claim are missing.

## DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal. Respondents' motion to strike portions of appellants' appendices is denied.


_____

FRANSON, J.

WE CONCUR:


_____

LEVY, Acting P.J.


_____

DETJEN, J.

24.